Admissibility in criminal trial of testimony given upon preliminary examination by witness not available at time of trial, see note in 25 L. R. A. (N. S.) 868.

---

McCARDELL, Respondent, v. DAVIS et al, Appellants.

(207 N. W. 662.)

(File No. 5540. Opinion filed March 5, 1926.)

**Bills and Notes—Holder in Due Course—Consideration—Holder in Due Course of Note for Gambling Debt May Recover, as Statute Making Such Notes Void Does Not Apply to Holders in Due Course (Rev. Code 1919, Secs. 1720, 1761, 3929).**

Rev. Code 1919, Sec. 3929, declaring void notes based on gambling transactions, does not apply to note held by bona fide holder, in view of Secs. 1720, 1751, first of which declares note valid in hands of holder in due course, notwithstanding any law making it generally void.

Dillon, J., dissenting.

Appeal from Circuit Court, Tripp County; Hon. John G. Bartine, Judge.

Action by Ed. McCardell against H. G. Davis, Russell F. Read, and Frank Day. From judgment for plaintiff and an order denying a new trial, the two first-named defendants appeal. Affirmed.

*O. D. Olmstead,* of Winner, and *E. O. Patterson,* of Washington, D. C., for Appellants.

*Doherty & Talbott,* of Winner, for Respondent.

(1) To point one of the opinion, Appellant cited: Traders Bank v. Aslop, 19 N. W. 863; Shoddy v. American National Bank (Tenn.), 7 L. R. A. 705; Western National Bank of Pueblo v. State Bank of Rocky Ford, 70 Pac. 439; Union National Bank of Columbus, Ohio, v. Mailoux, 132 N. W. 168.

Respondent cited: Higginbotham v. McGready, 81 S. W. 883, 105 A. S. R. 461.

GATES, P. J. This is an action on a promissory note, given as a renewal of a note given to the winner in a poker game. The note in suit was indorsed to plaintiff, a due course holder. Judgment was entered against the two makers and payee, indorser. The makers appeal from the judgment and order denying new trial.

From the early territorial days the following declaration has been upon our statute books (Civ. Code 1865-66, § 1745; C. C. 1877, § 1853; Comp. Laws 1887, § 4488; Rev. Codes 1903, Civ. Code, § 2200; Laws 1913, c. 279, § 16; Rev. Code 1919, § 1720):

"An indorsee of a negotiable instrument, in due course, acquires an absolute title thereto, so that it is valid in his hands, notwithstanding any provision of law making it generally void or voidable, and notwithstanding any defect in the title of the person from whom he acquired it."

In 1907 the Legislature enacted the following as section 3, c. 155, of the laws of thata session, now section 3929, Rev. Code 1919:

"Any note, bond or other contract made and entered into, where the whole or any part of the consideration thereof shall be for money or other valuable thing, won or lost, laid, staked or betted at or upon any game of any kind, under any name or by any means; or for the repayment of money or other thing of value, lent or advanced, at the time and for the purpose of any game, play, bet or wager, or being laid, staked, betted or wagered thereon shall be absolutely void."

We therefore have the situation by the last-named section that the note in suit is void. By the former section we have the situation that the note is not void in the hands of respondent, notwithstanding section 3929. These two conflicting statutes having been re-enacted as a part of the same revision, it is our duty to interpret them together, and give some effect to each if it can be done.

Under the Uniform Negotiable Instrument Law it is the holding, under the great weight of authority, that antigambling statutes such as said section 3929, Rev. Code 1919, are not repealed by that act, and that, even a bona fide purchaser of a note, given pursuant to a gambling transaction, cannot recover thereon from the maker. 5 Uniform Laws Ann. 262; notes 37 A. L. R. 698.

But, in enacting the Negotiable Instrument Law for this jurisdiction, the Legislature did not content itself with defining the rights of a due course holder in accordance with section 57 (Rev. Code 1919, § 1761), but in addition thereto it re-enacted the first above-quoted declaration as the third sentence of section 16, Negotiable Instrument Law (Rev. Code 1919, § 1720), and in the Revision of 1919 both of these conflicting statutes were re-enacted.

The situation therefore is vastly different from a similar one arising in jurisdictions which have adopted the uniform act without our modification of section 16, and the decisions from those jurisdictions are not persuasive of the interpretation to be given to our statutes. If we should say that section 3929 is controlling, then we would utterly eliminate the third sentence of section 1720, a decision which we cannot believe is in accordance with legislative intent; whereas, if we should say that section 1720 is controlling, then section 3929 stands, except as against holders in due course. From the history of the legislation as above set forth, we are of the opinion that the Legislature intended the latter.

The judgment and order denying new trial are affirmed.

DILLON, J. (dissenting). This is an action to recover on a promissor note. The facts as described by the evidence are as follows: Defendant Davis lost the aggregate sum of $531 in a poker game, for which he issued three checks, one to each of his three creditors for the various amounts due each. Said checks were drawn on the First National Bank of Winner, and, when presented, were refused payment on account of a lack of funds in Davis' account. Defendant Day, one of the parties present at said poker game, later took up these three checks, and then requested defendant Davis to execute and deliver to him a note (Exhibit 4) in the amount of $531. The consideration for the execution and delivery of said note was the return of the three checks, originally given to pay the gambling debts of said Davis. Later defendant Davis executed and delivered to defendant Day his note (Exhibit A) in the sum of $551. The consideration for the execution and delivery of this second note was the return of the first note (Exhibit 4). Later defendant Read indorsed this second note, and same was sold to plaintiff for the sum of $500. Plaintiff brought this action to recover upon said note (Exhibit A), and the lower court entered judgment for the plaintiff. De-

fendant then moved for a new trial, which motion the lower court denied, and it is from this judgment and order denying a new trial that this appeal is taken. Defendant Day does not appear as a party to this appeal.

Plaintiff contends that he is a holder in due course of the note in suit. Defendant contends that, because the initial transaction, which resulted in the execution of the note now in suit, was to pay a gambling debt, this note is absolutely void under the provisions of section 3929, R. C. 1919.

In the first nine assignments of error, appellants argue the question of whether or not the note in dispute is void, basing their argument on section 3929, R. C. 1919. There are no disputed facts in the evidence as to the origin of the note in suit. It has been clearly proven that this note was the result of three debts contracted in a poker game, and the above-cited section must be held to be controlling. There can be no such thing as a holder in due course of a note which was void from its inception.

Cases similar to the one at bar have been before the Supreme Courts of Iowa, Kentucky, Colorado, and Tennessee; all of these states having gambling statutes similar to ours. In Traders' Bank v. Aslop, 19 N. W. 863, 64 Iowa 97, it was said that an instrument or note given for a gambling debt was an absolute nullity, and, under the statute of Iowa, must be held to be void even in the hands of innocent purchasers. In Alexander v. Hazelrigg, 97 S. W. 353, 123 Ky. 677, it was said, "under Ky. St. 1903, § 1955, declaring all gambling contracts void," the provisions of the Negotiable Instrument Act, that "a holder in due course of a negotiable instrument holds it free from defenses available to prior parties among themselves, does not authorize one holding in due course a note given for a gambling debt to enforce such note." In Snoddy v. American National Bank, 13 S. W. 127, 88 Tenn. 573, 7 L. R. A. 705, 17 Am. St. Rep. 918, the Supreme Court of Tennessee said:

"A negotiable note is not valid, even in the hands of a bona fide holder, where it grows out of a wager contract, which is made a crime by statute, * * * although the statute does not expressly declare that such note shall be void in the hands of innocent holders."

In Western National Bank of Pueblo v. State Bank of Rocky Ford, 70 P. 439, 18 Colo. App. 128, it was said that:

" 'Even in the hands of bona fide purchasers, negotiable paper, founded in whole or in part upon a gambling or gaming consideration, within the meaning of this section, is utterly void.' If a negotiable instrument is void because of a gambling consideration, so must also be an assignment or indorsement, because it is a contract indisputably, and hence comes within the express language of the statute."

The note in dispute was void in its inception and the fact that it was negotiated cannot be held to make it valid. Assignment No. 10 has to do with the question of whether or not plaintiff was a purchaser in good faith, and becomes immaterial. Assignment No. 11 predicates error in denying a motion for a new trial. I think that a new trial was not necessary even though the verdict of the court was based on erroneous findings of fact and conclusions of law. There are no disputed questions of fact, and the evidence is sufficient upon which to base a reversal of the lower court's decision without the necessity of a new trial.

I think the case should be dismissed as to defendants Davis and Read, with instructions to enter judgment accordingly.

Note.—Reported in 207 N. W. 662. See, Headnote, American Key-Numbered Digest, Bills and notes, Key-No. 375, 8 C. J. Secs. 1033, 1035.